# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DONALD K. CUNNINGHAM, Jr., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 16-127 Erie |
| v. ) | |
| ) | District Judge Baxter |
| LISA ZUBSIC, et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Donald K. Cunningham, Jr. filed this *pro se* civil rights action based on events occurring during his confinement at the State Correctional Institution at Forest ("SCI-Forest"). The Defendants in this action are Lisa Zupsic ("Zupsic"),[1] Heather McKeel, NP-C ("McKeel"), and Barry Eisenberg ("Eisenberg"), all health care professionals who provided medical care at SCI-Forest during times relevant to this lawsuit.[2] Pending before the Court is the Defendants' motion to dismiss the complaint or, in the alternative, motion for summary judgment. ECF No. 46. The Court's jurisdiction is predicated on 28 U.S.C. §1331. For the reasons that follow, Defendants' motion will be granted; however, Plaintiff will be granted leave to amend his claim against Zupsic.[3]

---

[1] Defendants noted that Zupsic is improperly identified in the Complaint as "Lisa Zubsic." For present purposes, the Court will refer to Zupsic by her correct surname. The Court will further direct the Clerk of Court to amend the case caption so that it reflects the proper spelling of Zupsic's surname.

[2] The Complaint originally included Jamie Ferdarko, RNS as a Defendant; however, Mr. Ferdarko was dismissed from the action on August 17, 2017. *See* ECF No. 38. Barry Eisenberg was not among the individuals originally named as Defendants but was added on September 7, 2016. *See* ECF No. 12.

**I.     BACKGROUND**

Plaintiff's Complaint alleges the following facts which, in the context of a motion to dismiss, must be accepted as true[4]:

> NP-C Lisa Zubsic [sic] has seen me several times between July 2015 and March 2016 for a[n] itchy rash (?) that started on my buttocks and has spread over my entire body by August 2015. None of her prescribed or suggested treatments have worked to eliminate the problem. Neither the doctor's (Eisenberg) or other NP-C's prescribed or suggested treatments have worked to stop the itching. RNS Ferdarko accussed [sic] me of refussing [sic] treatment (my medical records dispute that claim) and not showering routinely. (I take a shower every evening.) Have been requesting a biopsy since July (mid) 2016 but, as of this date, I haven't be [sic] scheduled for this procedure.

ECF No. 5. As requested relief, Plaintiff asks the Court to order SCI-Forest "to perform a biopsy." He also seeks $250,000 in damages to compensate him for the "pain, stress, [and] aggravation" that he has suffered. (*Id.*)

On May 7, 2018, Defendants filed the pending motion to dismiss the Complaint or, in the alternative, motion for summary judgment, along with their supporting brief and related materials. (ECF No. 46, 47.) In their motion, Defendants argue that: (1) Plaintiff's complaint fails to state a cognizable violation of his rights under the Eighth Amendment to the U.S. Constitution; (2) Plaintiff has failed to plead any personal involvement on the part of McKeel or Eisenberg in the alleged wrongdoing; and, alternatively (3) Plaintiff's claims are barred inasmuch as he failed to exhaust administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. §1997e.

---

[3] This case was originally referred to the undersigned in her capacity as a United States Magistrate Judge. Having since been appointed as a United States District Judge, the undersigned now presides over this case in that capacity. *See* ECF No. 50.

[4] *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.") (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007)).

By order dated May 9, 2018, this Court directed Plaintiff to respond to the pending motion. ECF No. 48. Plaintiff was specifically advised that he could file a proposed amendment in order to cure any defects in his complaint. *Id*. Plaintiff was further advised that, in resolving the pending motion, the Court might treat the motion, either in whole or in part, as a motion for summary judgment under Federal Rule of Civil Procedure 56; thus, Plaintiff's response to the motion could include matters outside the pleadings such as affidavits. *Id*. To further guide Plaintiff, the Court laid out the full text of Rule 56 in its Order. *Id*.

On June 1, 2018, Plaintiff filed a two-page response to the pending motion. ECF No. 49. Therein, Plaintiff objected to the dismissal of his complaint and discussed the issue of exhaustion but did not submit any affidavits, documents, records, or other evidentiary materials in support of his position. Regardless, the motion is now ripe for adjudication.

**II.    STANDARD OF REVIEW**

A motion brought under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In order to withstand a Rule 12(b)(6) challenge, a complaint must allege sufficient factual content to support a plausible inference that the defendant is liable for the alleged wrongdoing. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 570. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see In re Burlington Coat Factory Sec. Liti*g., 114 F.3d 1410, 1426 (3d Cir. 1997).

"If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); *see Dorsey v. Pa. Dep't of Corr.*, No. 1:16-cv-588, 2016 WL 6124420, at *3 (M.D. Pa. Oct. 20, 2016). Federal Rule of Civil Procedure 56(a) requires the Court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether there is a genuine issue of material fact, the Court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler,* 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988). When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

**III.     DISCUSSION**

Though Plaintiff's cause of action is not expressly identified in the Complaint, his claims can fairly be construed as claims asserted under 42 U.S.C. §1983.[5] To state a viable cause of

---

[5] Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969) ("petition prepared by a prisoner ... may be inartfully drawn and should be read 'with a measure of tolerance'"); *Freeman v. Dep't of Corr.*, 949 F.2d 360 (10th Cir. 1991).

action under 1983, a plaintiff must allege that a person acting under color of state law deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States. *West v. Atkins*, 487 U.S. 42, 48 (1988). In this case, Plaintiff appears to be asserting a violation of his Eighth Amendments right to be free from cruel and unusual punishment under the theory that the Defendants were deliberately indifferent to his serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976) (holding that prison officials violate the Eighth Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed").

Defendants contend that Plaintiff's claims should be dismissed because they have been inadequately pleaded and/or because they have not been property exhausted, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). Because the latter argument is potentially dispositive, the Court begins its analysis there.[6]

---

[6] The U.S. Court of Appeals for the Third Circuit has indicated that exhaustion questions can be analyzed under Federal Rule of Civil Procedure 12(b)(6) when they depend on "'indisputably authentic documents related to [the inmate's] grievances.'" *Rinaldi v. United States,* 904 F.3d 257, 262 n.1 (3d Cir. 2018) (quoting *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004)) (alteration in the original). Such is the case here, as Defendants have appended Plaintiff's official grievance file in support of their Rule 12(b)(6) motion.

To the extent the Court must analyze Defendants' motion under Rule 56, *see* Fed. R. Civ. P. 12(d) (discussed, *supra*), the Court can only do so if it provides sufficient notice to the non-moving party and allows that non-moving party, especially a *pro se* prisoner plaintiff, to submit materials to oppose summary judgment. *See Renchenski v. Williams*, 622 F.3d 315, 340-341 (3d Cir. 2010) ("We agree with the majority of our sister circuits that adequate notice in the *pro se* prisoner context includes providing a prisoner-plaintiff with a paper copy of the conversion Order, as well as a copy of Rule 56 and a short summary explaining its import that highlights the utility of a Rule 56(f) affidavit. While we are mindful that this extra requirement imposes some burden upon the district courts [...], we believe this burden is slight [...]."). Here, this Court provided such a notice to Plaintiff. *See* ECF No. 48. Accordingly, Defendant's motion may alternatively be analyzed, in regard to the failure to exhaust defense, as a motion for summary judgment.

5

The PLRA's exhaustion provision states: "No action shall be brought with respect to prison conditions under [42 U.S.C. § ] 1983, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a "threshold issue that courts must address to determine whether litigation is being conducted in the right forum at the right time[,]" and must "be determined by a judge, even if that determination requires the resolution of disputed facts." *Small v. Camden Cty.*, 728 F.3d 265, 269-70 (3d Cir. 2013) (citations omitted) (emphasis in original). Failure to exhaust is an affirmative defense that must be pleaded and proven by the defendants; it is not a pleading requirement for the prisoner-plaintiff. *Jones v. Bock*, 549 U.S. 199, 212, 216–17 (2007).

In order to properly exhaust administrative remedies under the PLRA, "prisoners must complete the administrative review process in accordance with the applicable procedural rules, rules that are defined not by the PLRA, but by the prison grievance process itself." *Robinson v. Superintendent Rockview SCI*, 831 F.3d 148, 153 (3d Cir. 2016) (internal quotations and citations omitted). Courts are not given discretion to decide whether exhaustion should be excused, *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016), and there is no exception to the exhaustion requirement based on "futility." *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citations omitted).

Notwithstanding the lack of a futility exception, "[t]he PLRA requires only 'proper exhaustion,' meaning exhaustion of those administrative remedies that are 'available.'" *Rinaldi v. United States*, 904 F.3d 257, 266 (3d Cir. 2018) (quoting *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). The Supreme Court has identified "'three kinds of circumstances in which an administrative remedy, although officially on the books,' is not 'available' because it is 'not

6

capable of use to obtain relief': (1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" *Id.* at 266-67 (quoting *Ross v. Blake,* — U.S. ——, 136 S. Ct. 1850, 1859-60 (2016)). Similarly, in *Brown v. Croak*, 312 F.3d 109 (3d Cir. 2002), the Third Circuit Court of Appeals rejected a failure-to-exhaust defense where the plaintiff alleged that he had been given misleading filing instructions, resulting in a procedural default, and argued "essentially that officials in the security department of the prison thwarted his efforts to exhaust his administrative remedies." *Id.* at 113. Subsequently, in *Robinson v. Superintendent Rockview SCI*, *surpa,* the court held that a prison "rendered its administrative remedies unavailable to [the plaintiff] when it failed to timely (by its own procedural rules) respond to his grievance and then repeatedly ignored his follow-up requests for a decision on his claim." 831 F.3d at 154.

Relevant to these proceedings is the Pennsylvania Department of Corrections' ("DOC's") official Inmate Grievance System, which is governed by Administrative Directive 804 ("DC–ADM 804").[7] This grievance process consists of three steps: (1) initial review by a Grievance Officer of an inmate grievance; (2) the appeal to the Facility Manager to review the decision of

---

[7] The Court takes judicial notice of the fact that the applicable iteration of DC-ADM 804 is the most current version, which was issued on April 17, 2015 under the authority of Secretary of Corrections John E. Wetzel; the policy is available to the public at https://www.cor.pa.gov/About%20Us/Documents/DOC%20Policies/804%20Inmate%20Grievances.pdf. *See Mayon v. Capozza*, 2:14-CV-01203, 2017 WL 476790, at *7 (W.D. Pa. Feb. 6, 2017) ("the Court may take judicial notice that the applicable grievance procedure was the DC-ADM 804 and . . . that generally inmates who are in custody of the DOC receive a copy of the Inmate Handbook which contains portions of the DOC's grievance policy, DC-ADM-804.") (citations omitted).

7

the Grievance Officer; and (3) the final review or appeal to the Secretary's Office of Inmate Grievance Appeals ("SOIGA") to review the decision of the Facility Manager. *See* DC-ADM 804 (April 27, 2015); *see also Smith v. Sec'y of Pa. Dept. of Corr.,* No. 18-1240, --- F. Appx ---, 2018 WL 4771778, at *2 (Oct. 2, 2018) (discussing the three-step grievance process set forth in DC-ADM 804).

In support of their motion, Defendants have appended Plaintiff's complete SOIGA file. *See* ECF No. 47-1. A review of that file shows that Plaintiff fully exhausted only two grievances, *to wit:* Grievance #59692 and Grievance #609106. Of these two grievances, only the second one relates to the allegations that Plaintiff has raised here.[8] As Defendants correctly observe, however, Plaintiff never mentioned McKeel or Eisenberg anywhere in his filings relative to Grievance #609106. *See* ECF No. 47-1 at 3-19. This is problematic for Plaintiff, because DC-ADM 804 is clear in its requirement that "[t]he inmate shall identify individuals directly involved in the event(s)" comprising the grievance. *See* DC-ADM 804 §1(A)(11)(b).

In his response to Defendants' motion, Plaintiff states: "The reason Heather McKeel and Dr. Barry Eisenberg are not mentioned in any of my Inmate Grievance's [sic] is because they were the medical professionals whom [sic] were treating me for my condition at the time this

---

[8] Grievance #59692 relates to Plaintiff's request for a Z-code status based on his criminal conviction, institutional record, and history with cell mates.

In his response to the pending motion, Plaintiff states that "[i]n the copies of grievance's [sic] that were sent to me from the defendant's attorney (Benjamin M. Lombard), there was [sic] no copies of any grievances that were decided in my favor. I am asking this court to ask the defendant's attorney why this is so." ECF No. 49 ¶3. It is not clear to this Court what Plaintiff's statement is intended to suggest; for present purposes, the Court assumes that defense counsel, as an officer of the Court, has been truthful in representing that the entirety of Plaintiff's SOIGA file was submitted into the record now before the Court. To the extent Plaintiff is unhappy with the manner in which his grievances have been addressed by prison staff, that is an issue that must be addressed separately from this litigation. In any event, Plaintiff's response contains no allegation, much less a sworn statement, to buttress the conclusion that he has exhausted other claims relevant to this lawsuit.

8

court granted me permission to proceed with my case.  Therefore, I believed I had no reason to file a grievance against either one of them." ECF No. 49 ¶1.  This explanation is of no avail, as "an inmate cannot avoid [the] exhaustion requirement by merely alleging that the administrative policies were not clearly explained to him" or that he was "confus[ed] regarding [the] grievances procedures . . . ." *Milhouse v. Fasciana,* No. 1:14-cv-1973, 2018 WL 4699962, at *4 (M.D. Pa. Oct. 1, 2018) (citing cases).  Because Plaintiff's claims against McKeel and Eisenberg have not been properly exhausted, they are now barred.

Similarly, Plaintiff never administratively exhausted his claim for monetary damages, as he never made a request for monetary compensation in Grievance # 609106.[9]  In his response to Defendants' motion, Plaintiff states that "Inmate Grievance's [sic] are NOT lawsuits.  That is why I never even gave a thought to asking for a monetary settlement in any of my grievance's [sic] pertaining to this matter." ECF No. 49 ¶2.  As noted, however, "[i]t is the prison's requirements, and not the PLRA, that defines the boundaries of proper exhaustion." *Smith,* 2018 WL 4771778, at *1 (citing *Jones v. bock,* 549 U.S. 199, 218 (2007)).  DC-ADM 804 clearly states that, "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance." DC-ADM 804 §1(A)(11)(d).  Plaintiff did not do so and, consequently, his claim for monetary damages is now barred. *See Booth v. Churner,* 532 U.S. 731, 742 (2001) (holding that the PLRA's exhaustion requirement applies to grievance procedures "regardless of the relief offered through administrative procedures"); *Woodford v. Ngo,* 548 U.S. 81, 85 (2006) ("Indeed, as we held in *Booth,* a prisoner must now exhaust administrative remedies even where the relief sought –

---

[9] Plaintiff *did* seek equitable relief through the grievance process in the form of additional treatment – namely, referral to a dermatologist.  Accordingly, to the extent Plaintiff now seeks equitable relief in this lawsuit in the form of more specialized medical attention, the Court deems that request to be exhausted.

monetary damages – cannot be granted by the administrative process."); *see also Wright v. Sauers,* No. 13-358 Erie, 2017 WL 3731957, at *7 (W.D. Pa. Aug. 30, 2017) (construing DC-ADM 804 §1(A)(11)(d) to require a finding of procedural default where inmate failed to specify his desired monetary or other legal relief on his initial grievance form).

Plaintiff's claim against Zupsic stands on a different footing insofar as Plaintiff did administratively exhaust that claim. Nevertheless, Defendants contend that the claim against Zupsic should be dismissed because it is inadequately pleaded. This argument has merit.

As noted, Plaintiff's Complaint appears to implicate his rights under the Eighth Amendment. This constitutional provision proscribes the "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling v. McKinney*, 509 U.S. 25, 32 (1993). In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that prison officials violate the Eighth Amendment when they demonstrate deliberate indifference to a prisoner's serious medical needs by "intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Id.* at 104-05. Accordingly, in order to state an Eighth Amendment claim under 42 U.S.C. § 1983, a plaintiff must allege facts, which taken as true, would establish (1) a subjective showing that "the defendants were deliberately indifferent to [his or her] medical needs" and (2) an objective showing that "those needs were serious." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). Importantly, however, "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation." *Monmouth Cty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987). Moreover, when medical care is provided, "it is presumed that the treatment of a prisoner is proper absent evidence that it violates professional standards of care." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d

10

Cir. 1990) ("[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights")); *see also Norris v. Frame*, 585 F.2d 1183, 1186 (3d Cir.1978) ("Where the plaintiff has received some care, inadequacy or impropriety of the care that was given will not support an Eighth Amendment claim.")

Having reviewed the Complaint and accepted all well pled allegations therein as true, and after giving Plaintiff the benefit of all reasonable inferences, the Court agrees that Plaintiff has failed to state a viable Eighth Amendment claim against Zupsic. At most, Plaintiff's allegations establish that: Zupsic saw Plaintiff on several occasions between July 2015 and March 2016 for an itchy rash; she prescribed or suggested various treatments; and none of those treatments were effective. Plaintiff's remaining allegations concern the actions or inaction of other health care providers and are of no legal moment, because any §1983 liability on the part of Zupsic must be predicated on her own personal involvement in the alleged wrongdoing. *See Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1988). At most, Plaintiff's allegations against Zupsic establish that she rendered medical care which has not been effective, and Plaintiff disagrees with his course of treatment thus far. Even accepting all of Plaintiff's averments as true, the Court is compelled to conclude that no cognizable Eighth Amendment claim has been stated.

In light of the foregoing circumstances, Plaintiff's claim against Zupsic must be dismissed. In civil rights cases, courts must allow a plaintiff to amend his pleading unless doing so would be inequitable or futile. *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007). Although the Court has had an opportunity to review Plaintiff's grievance file, it does not have before it the entirety of Plaintiff's medical file;

11

consequently, the Court cannot definitively say that amendment of Plaintiff's claim against Zupsic would be futile. Plaintiff will therefore be granted leave to amend his complaint.

## IV. CONCLUSION

Based upon the foregoing reasons, the Defendants' motion to dismiss or, in the alternative, motion for summary judgment, will be granted. Plaintiff's claims against McKeel and Eisenberg will be dismissed with prejudice, and Plaintiff's claim against Zupsic will be dismissed without prejudice. Plaintiff will be permitted to file an amended §1983 claim against Zupsic on or before February 1, 2019, during which time the case will remain administratively closed.[10] If Plaintiff chooses not to file an amended pleading, the dismissal of his claim against Zupsic will be converted to a dismissal *with* prejudice without further notice. If Plaintiff *does* file an amended pleading, the case will be reopened at that point, and Defendant Zupsic will have fourteen (14) days within which to answer or otherwise respond to the amended complaint.

Dated: January 8, 2019

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States District Judge

---

[10] Such an administrative termination is not a "dismissal" for purposes of the statute of limitations, and if the case is reopened pursuant to the terms of the accompanying Order, it is not subject to the statute of limitations time bar if it was originally filed timely. *See Houston v. Lack*, 487 U.S. 266 (1988) (prisoner mailbox rule); *Papotto v. Hartford Life & Acc. Ins. Co.*, 731 F.3d 265, 275-76 (3d Cir. 2013) (collecting cases and explaining that a District Court retains jurisdiction over, and can re-open, administratively closed cases).